UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

-------------------------------------------------------
                                        :

DEAUDREY LOVELACE, et al.,      :     CASE NO. 1:05-cv-2203
                                          :
             Plaintiffs,        :
                                          :
vs.                                 :     OPINION AND ORDER
                                        :     [Resolving Doc. 24]
BP PRODUCTS NORTH AMERICA, INC.,:
                                          :
            Defendant.       :
                                          :
-------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

      Defendant BP Products North America, Inc., moves for summary judgment in this employment discrimination action.  [Doc. 24].  Plaintiffs DeAudrey Lovelace and Audra Picciano oppose summary judgment, and the defendant has replied.  [Docs. 34, 39].  For the reasons set forth below, the Court **GRANTS** the defendant's motion for summary judgment.

I.  Background

      Defendant BP hired Plaintiff Lovelace, an African-American, in June 2003.  BP hired Plaintiff Picciano, a Caucasian, in January 2004.  Both plaintiffs served as Customer Service Representatives ("CSRs") at a BP station in Strongsville, Ohio.  In the course of their employment, the plaintiffs staffed both the gas station and an attached Subway sandwich shop that BP owned and operated.  Chris Cordeiro is the General Manager of the Strongsville station.  Cordeiro reports to Melody Sheffield, an Account Executive.  Kim Tasse manages the Subway and reports to Cordeiro.

      Defendant BP has policies and procedures to prevent and prohibit workplace discrimination and harassment.  BP includes the policies in its employee manual.  BP maintains a copy of the

-1-

Case No. 1:05-cv-2203
Gwin, J.

employee manual at the Strongsville station and makes the manual available to all employees.  BP
also distributes the manual to its employees upon hiring.  The policy generally requires employees
to document alleged incidents of discrimination and inform management personnel.  The policy also
requires managers to investigate allegations of discrimination.

In October 2004, Plaintiff Picciano heard Lisa Abboud, a co-worker of Lebanese descent,
comment that black people "smell funny."  Picciano informed then-General Manager Julie Bruno
about Abboud's comment and filed a report.  Picciano also told Plaintiff Lovelace about the incident.

During this same period, Bruno requested that Lovelace wear a hairnet because customers
complained about hair in their sandwiches.  Lovelace asserts that Bruno did not ask any other
employee to wear a hairnet.  This offended Lovelace.  Lovelace also felt slighted when Abboud told
her that Abboud's husband found black females attractive because they are "so dark."  Lovelace did
not report this incident.  Abboud offended Lovelace again when she made a disparaging comment
about homosexuals.  Lovelace, an admitted heterosexual, filed a report but did not hear back from
management.

Later in 2004, Safety Coordinator Dawn Smith heard Abboud make disparaging comments
about disabled people.  Smith filed a complaint with General Manager Cordeiro, but Cordeiro did
not follow up on the complaint.

The plaintiffs' discontent intensified in April 2005.  On April 5, Picciano allegedly heard
Abboud use the N-word in reference to a customer.  Picciano informed Subway Manager Tasse and
General Manager Cordeiro about the incident and filed an incident report.  Cordeiro confronted
Abboud, who denied making the comment.  Tasse reviewed tapes from the store's surveillance

-2-

Case No. 1:05-cv-2203
Gwin, J.

cameras to investigate the allegation.  The cameras' audio equipment malfunctioned, and so Tasse could not determine exactly what Abboud said.  Tasse spoke with Plaintiff Picciano and Abboud, informing them that the tapes were unclear.  Abboud apologized for saying anything that offended Picciano, but added that Picciano should not be offended because she is white.  Cordeiro considered the issue resolved and did not forward the report to BP Human Resources.

On April 8, 2005, Picciano told Lovelace about Abboud's purported use of the N-word. Lovelace confronted Abboud on April 12, and the two ladies exchanged profanities during a spirited discussion.

Thereafter, the disharmony between Abboud, Picciano and Lovelace continued unabated. Lovelace complained about Abboud's rudeness to Tasse on April 18 and 19.  On April 23, Lovelace gave an incident report to Cordeiro complaining about Abboud's supposed comments about gays and blacks.  The fact that Lovelace never actually heard the alleged comments did not diminish her anger.  Another BP employee, Katie Miyoshi, used the N-word in the presence of Picciano and Lovelace on April 23, 2005.

On April 25, 2005, Plaintiff Picciano spoke with Linda McCrae, a BP Human Resource Advisor, about her complaints.  McCrae told Picciano that BP's investigation did not reveal that Abboud used the N-word.  Plaintiff Lovelace spoke with McCrae on April 26.  McCrae told Lovelace to "move on."  Lovelace became upset and said BP would take no action because, in Lovelace's words, "I am a nigger."  BP issued a written admonishment to Lovelace, instructing her not to use racist terminology in the workplace.

In May 2005, Picciano heard yet another Strongsville CSR, Jacob Wagner, use the N-word.

-3-

Case No. 1:05-cv-2203
Gwin, J.

Picciano also became miffed when Abboud gave her a "rude look."  To Cordeiro's certain chagrin,

on May 4 Lovelace again told him about her ongoing dissatisfaction with Abboud and the April 5

incident.  Cordeiro responded that the matter was closed.  Lovelace also felt slighted when a

customer yelled at her when she refused his coupon.  Lovelace threw his sandwich away, and Tasse

told her to make a new one.  Lovelace felt Tasse treated her this way because she is black.  On

previous occasions, store managers kicked unruly customers out of the store.

Lovelace filed yet another incident report on May 16, 2005, when another CSR said they

should refer to Abboud as a "camel jockey."  According to the plaintiff, BP did not investigate the

incident.

Picciano and Lovelace filed another incident report on May 24, 2005.  The plaintiffs said that

Abboud and another employee made fun of deaf people.  Lovelace also complained that a supervisor

marked her five minutes late, while Abboud received no such notation.  Later that day, Abboud

referred to the fact that her hair "frizzled" in front of Picciano and Lovelace.  Abboud said, "you

know what I mean" to Lovelace.  Lovelace and Picciano reported this invective to Cordeiro the next

morning. The beleaguered Cordeiro responded that the plaintiffs should "not read too much into it."

Nevertheless, Picciano filed another incident report.  BP took no action against Abboud.

On the morning of May 27, 2005, Picciano and Abboud argued again.  Picciano says that

Abboud referred to her as a "nigger lover" and a bitch.  The plaintiffs also heard a Hispanic co-

worker refer to himself as a "spic."  According to the plaintiffs, they prepared three incident reports

that morning.  Tasse recalls them filing seven reports. Tasse observed that the plaintiffs spent over

an hour filling out their reports.  The plaintiffs said the reports only took "a couple of minutes" and

Case No. 1:05-cv-2203
Gwin, J.

did not distract them from their work duties.  The plaintiffs informed Cordeiro about the morning's happenings when he arrived at 7:30 a.m.

Near 8:15 a.m. on May 27, Tasse told the plaintiffs that they were disrupting the workplace and that she was sending them home.  The plaintiffs also say Tasse told them they no longer had jobs, but Tasse and Cordeiro deny this.  Later that day, Tasse left a phone message for Picciano saying that Tasse called to talk to Picciano about her schedule.  When the Strongsville store posted its work schedule for the next week, it did not list Lovelace or Picciano.

On June 15, 2005, Cordeiro wrote letters to Lovelace and Picciano to discuss placing them back on the work schedule.  Cordeiro also asked the plaintiffs to respond by June 23.  The plaintiffs received the letters, but did not respond.  BP officially terminated the plaintiffs' employment when they failed to respond.  Tasse recalls differently, saying that the plaintiffs lost their jobs when they failed to show up for work as scheduled after the May 27 debacle.

The plaintiffs requested, and received a right-to-sue letter from the EEOC.  The plaintiffs sued BP on September 19, 2005.

## II.  Legal Standard

Summary judgment is appropriate when the evidence submitted shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56©).  In seeking summary judgment, the moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the nonmoving party's case.  *Waters v. City of Morristown*, 242 F.3d 353, 358 (6th Cir. 2001).  A fact is material if its resolution will affect the outcome of the lawsuit.  *Daughenbaugh v. City of Tiffin*,

Case No. 1:05-cv-2203
Gwin, J.

150 F.3d 594, 597 (6th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  In deciding whether the moving party has met this burden, a court must view the facts and draw all inferences in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970).  However, "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the moving party satisfies its burden, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue. *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  It is not sufficient for the nonmoving party merely to show that there is some metaphysical doubt as to the material facts. *See id.*  Additionally, the Court has no duty to "search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989).

A factual dispute precludes summary judgment only if it is material, that is, if it relates to a matter essential to adjudication.  The dispute must concern facts that, under the substantive law governing the issue, might affect the outcome of the suit. *Anderson*, 477 U.S. at 248.  The factual dispute also must be genuine.  The facts must be such that if proven at trial a reasonable jury could return a verdict for the nonmoving party. *Id.* at 248.  "The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial." *60 Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987) (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968)); *see also Celotex*, 477

-6-

Case No. 1:05-cv-2203
Gwin, J.

U.S. at 322.

## III.  Analysis

The plaintiffs make the following claims against BP: (1)  hostile work environment and retaliation in violation of 42 U.S.C. § 1981 (Count 1); (2) hostile work environment in violation of Title VII (Counts 2, 8); (3) retaliation in violation of Title VII (Counts 3, 7); (4) hostile work environment in violation of Ohio Rev. Code § 4112; and (5) retaliation in violation of Ohio Rev. Code § 4112 (Counts 5, 6).  The Court grants summary judgment to the defendant.

### A.  *Title VII Claims*

In this case, the plaintiffs raise two Title VII claims: (1) hostile work environment based on racial harassment; and (2) retaliation for engaging in protected activities.  The Court addresses each claim.

#### 1.  *Hostile Work Environment*

To establish a hostile work environment claim against an employer based on the actions of a co-worker, a plaintiff must show that (1) he is a member of a protected class, (2) he was subjected to unwanted harassment, (3) the harassment was based on his membership in the protected class, (4) the harassment unreasonably interfered with his work performance, creating a hostile work environment, and (5) the defendants knew or should have known of the harassment but failed to implement prompt and appropriate corrective action.  *See Bowman v. Shawnee State Univ.*, 220 F.3d 456, 463 (6th Cir. 2000); *Gwen v. Regional Transit Auth.*, 7 Fed. Appx. 496, 500 (6th Cir. 2001).

Under this theory of discrimination, a claim will lie only where "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter

-7-

Case No. 1:05-cv-2203
Gwin, J.

the conditions of the victim's employment." *Harris v. Forklift Sys.* 510 U.S. 17, 21 (1993).

Evidence that the conduct at issue was so severe or pervasive as to create a hostile work

environment "may include the frequency of the discriminatory conduct; its severity; whether it is

physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably

interferes with an employee's work performance." *Id.* at 23. *See also Clark County School Dist.*

*v. Breeden,* 532 U.S. 268, 270 (2001). The Sixth Circuit recognizes that Caucasians may pursue

Title VII claims when subjected to animus based on their advocacy for African-Americans. *See*

*Kelly v. Senior Centers, Inc.*, 169 Fed. Appx. 423, 428 (6th Cir. 2006); *Johnson v. University of*

*Cincinnati*, 215 F.3d 561, 574-75 (6th Cir. 2000).

To establish that the harassment unreasonably interfered with his work, a plaintiff must show

both objective and subjective components. *Williams v. Gen. Motors Corp.*, 187 F.3d 553, 566 (6th

Cir. 1999). The plaintiff must show both that a reasonable person would find the environment

objectively hostile and that the plaintiff personally found the conduct severe or pervasive. *Id.* at 568.

Offhand comments and isolated incidents, unless extremely serious, will not amount to

discriminatory changes in the "terms and conditions of employment," and that conduct must be

extreme in order to be actionable. *Hafford v. Seidner*, 183 F.3d 506, 512-13 (6th Cir.1999).

The plaintiffs base their hostile environment claim on the following conduct: (1) Abboud's

comment regarding the "frizziness" of Lovelace's hair; (2) Abboud's comment that her husband

thought dark-skinned women were pretty; (3) Abboud's comment that African-Americans "smell

funny"; (4) Abboud's comment that Picciano should not care about the use of the N-word; (5)

Abboud's use of the N-word in reference to a customer on April 5; (6) the use of the N-word by two

-8-

Case No. 1:05-cv-2203
Gwin, J.

other BP employees; (7) Tasse's direction that Lovelace prepare a sandwich for an unruly customer;

(8) another employee using the term "camel jockey" in reference to Abboud; (9) Abboud's making

fun of disabled people; (10) Cordeiro's "cold shoulder" treatment of the plaintiffs; (11) the ostracism

of the plaintiffs by their co-workers; and (12) the managers' decision not to discipline Abboud.

The plaintiffs' hostile environment claim fails because they do not offer evidence that the

Strongsville BP was "permeated with discriminatory intimidation, ridicule, and insult that is

sufficiently severe or pervasive to alter the conditions of the  [victims'] employment." *Harris*, 510

U.S. at 21.  The plaintiffs seem most offended by Abboud's boorish comments, especially her use

of the N-word on April 5, 2005.  Regarding the April 5, 2005 incident, Abboud denied making the

statement and no third parties nor any surveillance tape supported either Picciano's or Abboud's

version.  The plaintiffs filed several of their 17 incident reports based on the April 5 incident.  On

the whole, the plaintiffs challenge approximately ten comments from October 2004 through May

2005, as well as their co-workers' apparent disdain for them.

The Sixth Circuit considered similar conduct in *Kelly*.  There, the plaintiff based his hostile

environment claim on (1) two co-workers' use of the N-word in reference to participants in a

program the plaintiff supervised; (2) an executive's description of a board member as a "token

black"; (3) the executive's comments that the foster program participants were slovenly or were

"pigs" at meals; (4) the executive's tolerance of racist comments by workers; (5) the program

coordinator's three racist jokes; and (6) rude comments about an African-American staff member's

bathroom habits.  *Kelly*, 169 Fed. Appx. at 429.  The Sixth Circuit agreed with the district court's

conclusion that  the plaintiff's charges of racial harassment did not amount to  a pervasive,

Case No. 1:05-cv-2203
Gwin, J.

aggressive or constant course of conduct.  In doing so, the court held that the incidents were too isolated to rise to the level of a hostile environment and that the plaintiff failed to show that the incidents interfered with his ability to do his job.  *Id.* at 429-30.

In this case, the Court finds that the defendant's conduct was not so severe or pervasive that a reasonable person would find it hostile or abusive.  Nor do the plaintiffs demonstrate that the comments interfered with their work.   The plaintiffs may have subjectively found the conduct to be hostile, but that is not enough under *Harris*.

In addition, Defendant BP took reasonable steps to correct and prevent racial harassment by its non-supervisory personnel.  This shields BP from liability for the workers' comments. *See Davis v. Monsanto Chem. Corp.*, 858 F.2d 345, 349 (6th Cir. 1988).  After Picciano filed her initial incident report with the defendant, Tasse immediately interviewed Abboud and reviewed the surveillance tapes.  Because there were no witnesses and the surveillance tapes did not corroborate Picciano's allegations, the managers did not discipline Abboud.  [Tasse Dep. at 28].  After the plaintiffs expressed dissatisfaction with defendant's initial investigation, McCrae, the Human Resource Advisor, conducted a second investigation that confirmed there was no evidence to corroborate Picciano's allegations. [Picciano Dep. at 113-14].  Next, on May 4, 2005, BP reviewed its anti-harassment policy with all of the employees in the store.  [Lovelace Dep. at 88; Picciano Dep. at 140, 146; Cordeiro Dep. at 69-70]  Finally, to address the plaintiffs' subjective perceptions, BP offered them an opportunity to transfer to a different location if they did not feel comfortable working at the current store.  [Lovelace Dep. at 178-79, 191-92, 201-02; Picciano Dep. at 160-61].

The Court grants summary judgment to the defendants on the Title VII hostile environment

Case No. 1:05-cv-2203
Gwin, J.

claim.

### 2. Retaliation

Title VII prohibits retaliatory employment actions against employees who oppose or report workplace practices that violate Title VII. *See* 42 U.S.C. § 2000e-3(a). The Sixth Circuit applies the *McDonnell Douglas* framework to workplace retaliation claims. *See McDaniel v. Transcender LLC*, 119 Fed. Appx. 774, 779 (6th Cir. 2005). To establish a prima facie retaliation case, a plaintiff must show that (1) she engaged in a protected activity, (2) the employer knew about the protected activity, (3) the employer took an adverse employment action against the employee, and (4) there was a causal connection between the protected activity and the adverse action. *Smith v. City of Salem*, 378 F.3d 566, 570 (6th Cir. 2004). If the plaintiff establishes a prima facie case, the defendant can demonstrate a legitimate reason for the adverse employment action. *Canitia v. Yellow Freight Sys., Inc.*, 903 F.2d 1064, 1066 (6th Cir. 1990). The plaintiff must then show that the proffered reason for the action was pretext for retaliation. *Id.*

The defendant says that the plaintiffs' retaliation claims fail for two reasons. First, as to the plaintiffs' incident reports, the defendant's remedial response was appropriate. Second, the defendant was justified in terminating the plaintiffs because of their divisive and disruptive behavior. The plaintiffs respond that they have established a prima facie case of retaliation. After the plaintiffs filed numerous incident reports, Cordeiro told them days before their termination that they would be fired if they continued to complain about the April 5 incident.

The Court finds that the plaintiffs do not make a prima facie case of retaliation. While the plaintiffs engaged in protected conduct by filing incident reports and BP terminated them, they do

-11-

Case No. 1:05-cv-2203
Gwin, J.

not establish a causal connection between the termination and the reports.  Further, the defendant offers a reasonable business justification for the plaintiff's termination, and the plaintiff's do not rebut the justification.

Although Congress plainly intended to provide broad protection for individuals who complain of an employer's discriminatory conduct, it is equally clear that such protection is not without limits.  The Court must balance the need  "to protect persons engaging reasonably in activities opposing . . . discrimination, against Congress' equally manifest desire not to tie the hands of employers in the objective selection and control of personnel."  *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1322 (6th Cir. 1989).  "There may arise instances where the employee's conduct in protest of an unlawful employment practice so interferes with the performance of his job that it renders him ineffective in the position for which he is employed.  In such a case, his conduct or form of opposition, is not covered . . . ."  *Id.*  "An employee is not protected when he violates legitimate rules and orders of his employer, disrupts the employment environment, or interferes with the attainment of his employer's goals."  *Id.*

The defendant points to numerous instances of disruptive conduct by the plaintiffs, including: (1) Lovelace's use of the term "nigger" when she talked to McCrae; (2) Lovelace's refusal to work with Abboud; (3) the plaintiff's ongoing discussions of the April 5, 2005 incident, which resulted in at least three complaints from co-workers; and (4) Lovelace's refusal to make a customer a sandwich because she considered him to be a racist.

Even if the Court found that the plaintiffs successfully demonstrated a prima facie case of retaliation, BP has provided "legitimate, nondiscriminatory reason[s]" for terminating their

-12-

Case No. 1:05-cv-2203
Gwin, J.

employment.  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).  BP was under no
obligation to tolerate the plaintiffs' ongoing divisive and disruptive behavior.  The plaintiffs'
fixation on the events of April 5 had worn down other store employees.  [Cordeiro Dep. at 57].
Also, several employees complained that plaintiffs called them racist for refusing to cooperate in
their campaign against Abboud.  [Cordeiro Aff. ¶ 4; Tasse Aff. ¶ 5].  On May 27, Tasse removed
the plaintiffs from the premises because they were disrupting the workplace.

More important, the plaintiffs failed to respond to Cordeiro's letters asking them to call about
putting them back on the work schedule.  [Cordeiro Aff. ¶ 6].  Even assuming that plaintiffs' prima
facie case was true, in order to meet their burden plaintiffs must demonstrate that the legitimate
reasons for their termination proffered by BP are merely a pretext masking actual discrimination.
This showing can be made by demonstrating the proffered reason "(1) has no basis in fact, (2) did
not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the
challenged conduct."  *Dews v. A. B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000).  However,
Lovelace and Picciano failed to demonstrate any of these elements.

The Court grants summary judgment to the defendant on the retaliation claim.

*B.  Lovelace's Section 1981 Claim*

Lovelace alleges a claim of hostile workplace harassment under 42 U.S.C. § 1981.  The
parties agree that the Court applies the same standards to the 1981 claim as the Title VII claim.
[Doc. 34 at 22].  *See Noble v. Brinker Int'l, Inc.*, 391 F.3d 715, 720 (6th Cir. 2004).  The Court
grants summary judgment to the defendant on the section 1981 claim for the same reasons discussed
above with regard to the Title VII claim.

-13-

Case No. 1:05-cv-2203
Gwin, J.

*C.  State Law Claims*

The plaintiffs also make claims of hostile workplace harassment and retaliation under Ohio

Rev. Code § 4112.  The parties agree that the Court should evaluate the state law claims under the

same standards as the Title VII claim.  [Doc. 34 at 22].  *See Plumbers & Steamfitters Joint*

*Apprenticeship Comm. v. Ohio Civil Rights Comm'n.*, 66 Ohio St. 2d 192, 196 (1981) (holding that

"federal case law interpreting Title VII . . . is generally applicable to cases involving alleged

violations of R.C. Chapter 4112").  As with the section 1981 claim, the Court grants summary

judgment on the state law claims under the same reasoning applied to the Title VII claims.

IV.  Conclusion

For the foregoing reasons, the Court **GRANTS** the defendant's motion for summary

judgment.  [Doc. 24].  Accordingly, this action is terminated pursuant to Federal Rule of Civil

Procedure 58.

IT IS SO ORDERED.


Dated: September 6, 2006                              s/            *James S. Gwin*
                                                     JAMES S. GWIN
                                                     UNITED STATES DISTRICT JUDGE

-14-